STATE of Missouri, Respondent,

v.

Donnell WHITE, Appellant.

No. WD 35503.

Missouri Court of Appeals,
Western District.

May 17, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 28, 1988.

Application to Transfer Denied
July 26, 1988.

Sean D. O'Brien, Public Defender, David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jared Richard Cone, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P.J., and BERREY and GAITAN, JJ.

TURNAGE, Presiding Judge.

Donnell White was found guilty by a jury in October of 1983 of capital murder, § 565.001 RSMo 1978, and punishment was fixed at life imprisonment without eligibility for probation or parole for 50 years.

On June 4, 1985, this court affirmed the conviction by order. *State v. White,* 694 S.W.2d 802 (Mo.App.1985). A memorandum stating the reasons for the affirmance was sent to the parties. Thereafter, the Missouri Supreme Court denied transfer. On February 23, 1987, 107 S.Ct. 1268, the United States Supreme Court vacated the judgment of this court and remanded this cause for reconsideration in light of *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

Among the points raised in the original appeal to this court was one alleging error for failure to quash the jury panel because the State exercised all of its peremptory challenges to exclude blacks. This court took the view that *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), was not retroactive. Under the decision in *Griffith,* the holding in *Batson* would apply to this case because this cause had not become final at the time *Batson* was decided.

This court readopts the holding of June 4, 1985, with respect to all points except that pertaining to the use of peremptory challenges by the State. Accordingly, all other points are found against White for the reasons set out in the memorandum filed June 4, 1985, and sent to the parties. On remand from the U.S. Supreme Court, this court remanded the case to the Circuit Court of Jackson County for the purpose of holding a hearing and entering findings of fact and conclusions of law concerning the use by the State of its peremptory challenges to exclude blacks. The circuit court has held such hearing and has supplied this court with its findings of fact and conclusions of law, together with the transcript of that hearing. The parties have filed supplemental briefs addressing the peremptory challenge issue.

The court found that a venire of 65 was impaneled on October 3, 1983. On completion of voir dire and action on the motions to strike for cause, a qualified panel of 30 was left. Each side was given 9 peremptory strikes.

Of the 30 qualified veniremen, 26 were white and four were black. Counsel for White struck 9 whites. The State excluded all of the black veniremen by use of its peremptory strikes. This resulted in a jury of 12, who were all white.

The defendant is black, as was the victim, who was a woman over 80 years of age and who was extremely intoxicated at the time of death. In addition, two of the witnesses were black.

The court found that the prosecuting attorneys who tried this case formulated a profile of a favorable juror based on their experience in trying criminal cases. This profile was of a conservative, middle aged man with a family, who was intelligent, employed, and who favored or was neutral toward the death penalty and was without strong opposition to drinking. The court

found that the prosecutors exercised all of the State's peremptory challenges by striking those veniremen who least resembled their profile. Thus, the State exercised all nine of its peremptory challenges to strike women from the jury. The panel of 30 was composed of 14 women and 16 men.

The court found that the State offered a race neutral explanation for striking each of the four black women. One was a young woman who leaned toward the imposition of life imprisonment instead of the death penalty and was opposed to drinking to the point of drunkenness. Another was a young woman who leaned toward life imprisonment instead of death and who impressed the prosecutors as being extremely unfavorable to the prosecution. Another was a woman who felt that the death penalty should not be applied to a young boy who had not been in trouble before and who came from a broken home, all of which applied to White. The final strike was a young woman who leaned toward the imposition of life imprisonment instead of the death penalty.

The court found that the State based the exercise of its peremptory challenges toward black veniremen on the basis of age, gender, attitude toward the death penalty, attitude toward the use of alcohol, and demeanor. The court further examined in camera the notes made by the prosecutors during voir dire and found no evidence to suggest that race was a factor in the peremptory strikes. The court further found that it was acquainted with the professional and ethical reputations of Delany Dean and Larence Schrader, the assistant prosecutors who tried this case. White presented no evidence at the hearing.

The court concluded that White had failed to make a prima facie case of racial discrimination in the use by the State of its peremptory challenges.

White contends that the State exercised its peremptory challenges to exclude the only four black veniremen and that this denied him equal protection of the law under the holding in *Batson*. White urges that this court can find that a prima facie case of discrimination was made through the application of statistical data regarding the percentage of blacks on the panel, the high percentage of blacks that were struck in comparison to whites, and the percentage of blacks in Jackson County.

*Batson* was considered in *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987), and guidelines were announced for the application of *Batson* in Missouri. The court held in *Antwine* that as a practical matter the trial court must consider the State's explanation of its use of peremptory challenges in determining whether or not a defendant has made a prima facie case. *Antwine*, 743 S.W.2d at 64[14]. The court further held that the trial court must determine from the totality of circumstances whether an articulated explanation is race neutral or is only an excuse for discrimination. *Id.* The court stated that in making peremptory challenges counsel must rely upon perceptions of attitudes based upon demeanor, gender, ethnic background, employment, and many other factors. *Id.*

It is clear from *Antwine* that the determination of whether or not explanations offered for the exercise of peremptory strikes are sufficient to rebut a prima facie case of discrimination involves far more than a mere statistical analysis of the number of strikes.

A statistical approach would violate the holding in *Antwine*, which requires the finding to be based on the totality of the circumstances, including the many factors involved in evaluating individual veniremen. In short, *Antwine* requires a factual determination rather than a statistical study.

In *U.S. v. Montgomery*, 819 F.2d 847, 851[4, 5] (8th Cir.1987), the court was given a statistical argument and held that *Batson* does not require the government to adhere to a specific mathematical formula in the exercise of peremptory challenges. *See also U.S. v. Clemons*, 843 F.2d 741 (3rd Cir.1988).

■ This court concludes that merely showing that the State used a greater percentage of strikes on blacks in conjunction with various other statistical studies will

not suffice to make a prima facie case of discrimination.

◼ The other ground on which White challenges the State's peremptory strikes is that several white veniremen gave some of the same answers as the blacks who were struck. The factual contention made by White is correct, but this does not mandate a finding that the State exercised its strikes to eliminate blacks from the jury because of a racial motivation. As noted, the review is of the totality of the circumstances to determine whether or not a neutral explanation has been given. Merely showing that some whites gave the same answer to some questions as some blacks does not establish a racial motive for the exercise of peremptory strikes. The trial court found that no whites were similarly situated to the blacks who were struck. Further, the fact that the victim and two witnesses were black, as was White, discounts any advantage the prosecutor might have in striking blacks from the panel. *Antwine*, 743 S.W.2d at 67.

◼ White made no attempt to demonstrate that the prosecutor's explanations were pretextual or racially motivated. The explanations given by the prosecutors were legitimate, non-pretextual, and neutral. Further, such explanations were clear and reasonably specific. This court can only overturn the finding of the trial court if this court concludes that the finding is clearly erroneous. *Antwine*, 743 S.W.2d at 66. There is no ground on which to find that the trial court's findings and conclusions are clearly erroneous.

The judgment is affirmed.

All concur.