UNITED STATES of America, Appellee,

v.

**Russell Dereck BATTLE, a/k/a Buck, Appellant.**

No. 86–2389.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1987.

Decided Dec. 30, 1987.

Stephen Gilmore, St. Louis, Mo., for appellant.

Richard Poehing, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

LAY, Chief Judge.

Russell Dereck Battle appeals from his judgment of conviction for possession of heroin with intent to distribute. Battle was convicted of violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (possession with intent to distribute heroin) and sentenced to ten years imprisonment to be followed by a special parole term of three years. Battle challenges the admissibility of certain evidence, and the sufficiency of the evidence to support his conviction. In

addition, Battle maintains the government improperly exercised its peremptory challenges in selection of the jury. At this time we need only address the peremptory challenges exercised by the government.[1]

■ Battle, who is black, maintains that the government unconstitutionally used its peremptory challenges to substantially reduce the number of blacks available to sit on the jury. To establish a constitutional violation, a defendant must first establish a prima facie case of purposeful discrimination in selection of the jury panel. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). "[A] defendant may establish a prima facie case of purposeful discrimination * * * solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Id.* at 96. To establish a prima facie case, the defendant must show that he is a member of a cognizable racial group and that the prosecutor exercised peremptory challenges to exclude members of his race from the jury. He then "must show that these facts and any other relevant circumstances raise an inference that the prosecutor used [his peremptory] practice to exclude the veniremen from the petit jury on account of their race." *Id.* In determining whether a defendant has established the requisite showing of purposeful discrimination, the trial court should consider all relevant circumstances including, but not limited to, a pattern of strikes against black jurors, as well as the prosecutor's questions and statements during voir dire. *Id.* at 96–97.

If the defendant establishes a prima facie case of purposeful discrimination, the burden then shifts to the prosecution to articulate a neutral explanation for challenging the black veniremen. While the prosecutor's explanation need not rise to the level necessary to justify a challenge for cause, a mere affirmation of good faith is insufficient. *Id.* at 97.

In the instant case, the record demonstrates that there were seven blacks on the original jury panel. The government exercised five of its six (83%) allowable peremptory challenges to strike five of the seven (71%) blacks from the jury panel. The voir dire revealed that two of the five were involved in some type of criminal or civil law suit. Each of these jurors stated it would not influence their judgment on the case. Three of the five jurors testified they or their families were victims of crimes.

■ After Battle objected to the government's use of its peremptory challenges, the trial court asked the government if it would like to state on the record the reasons why it so exercised its challenges. The government replied that it did not believe it was under any requirement to make a record. The trial court agreed, stating that it understood *Batson* to provide a permissive, rather than a mandatory procedure for articulating the reasons for the strikes.[2]

After the government refused to provide the reasons for striking the black jurors,

---

1. This appeal was consolidated for argument with *U.S. v. Parker*, 836 F.2d 1080 (8th Cir.1987), decided this same date. Although the drug transactions arose out of the same sequence of events as recited in the *Parker* case, both Battle and Parker were tried before The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri, in separate trials.

2. The following colloquy occurred between the trial court and the government:

THE COURT: All right. The objections are made under the recent Supreme Court opinion, which indicated that lawyers, particularly the prosecution, should not remove jurors from the list of veniremen by preemptory [sic] challenges simply because they were black, and that when they did so, if they did so, they'd be given an opportunity to explain, and while the evidence does not have to be the same evidence as is required in a case in which a reasonable doubt is the norm, they would be expected to give some explanation as to why they did what they did do.

So Mr. Poehling, you did strike five of the seven black veniremen. You left two on. Do you care to make a record as to why you took—

MR. POEHLING: I don't think the Government is under any requirement to make a record as to why—

THE COURT: I don't think you're under any requirement. I understand the case to say that you may do so.

the trial court thereafter found there was no discrimination.[3] We believe this finding was improper in view of the standards set forth in *Batson.* In our view, Battle did establish sufficient facts to establish a prima facie case of racial discrimination. Moreover, like the trial court, we believe that the standards enunciated by the Supreme Court in *Batson* are applicable in this case. However, unlike the trial court, we conclude that in circumstances such as these, *Batson* requires that the government articulate racially neutral reasons for so exercising its peremptory challenges. The choice is not discretionary.

■ Because the government failed to articulate the reasons for its peremptory strikes in this case, we remand to the district court with instructions to conduct an evidentiary hearing as to the government's reasons for using its peremptory challenges to exclude the five black veniremen. In remanding this case, we emphasize that under *Batson,* the striking of a single black juror for racial reasons violates the equal protection clause, even though other black jurors are seated, and even when there are valid reasons for the striking of some black jurors. *United States v. Gordon,* 817 F.2d 1538, 1541 (11th Cir.1987); *United States v. David,* 803 F.2d 1567, 1571 (11th Cir. 1986).

The evidentiary .hearing and the trial court's findings should be entered within sixty days; upon entry the matter should be certified to this court for further consideration by the panel.[4]

Transcript at 42–43.

**3.** Without benefit of explanation from the government, the trial court determined that the government's challenge to three of the black jurors was justifiable without respect to race because the jurors were either defendants or had close friends or relatives who were defendants in criminal cases. The record also reflects that two of these stricken jurors had been victims of crimes. The trial court opined that the government would not ordinarily strike jurors who had been victims of crime because they are normally more friendly to the government. We must respectfully disagree with the trial court's opinion that the government would not discriminatorily strike jurors who had been victims of

crime. Even assuming one might find these jurors were friendly to the government, an assumption which in our opinion does not necessarily follow, one could equally speculate that the fact the government exercised a peremptory strike as to each might serve to reinforce an inference of purposeful racial discrimination. Moreover, there was no explanation provided by the government at trial or by the trial court with respect to the other two black veniremen who were striken by the government in this case.

**4.** In view of our interlocutory order of remand we hold in abeyance review of the other issues Battle has raised.