859 F.2d 1321
 27 Fed. R. Evid. Serv. 158
 UNITED STATES of America, Appellee,
v.
Abraham RODREQUEZ, Appellant.
UNITED STATES of America, Appellee,
v.
Eduardo GOMEZ-RODRIGUES, Appellant.
UNITED STATES of America, Appellee,
v.
Omar A. ZULUETA, Appellant.
UNITED STATES of America, Appellee,
v.
John ARREDON a/k/a Luis Perez, a/k/a Ignacio Varona, Appellant.
UNITED STATES of America, Appellee,
v.
Jose MADRAZO a/k/a Jose Leon Madrazo and a/k/a Jose
Madrazoleon, Appellant.
 Nos. 87-1495, 87-1525 to 87-1527 and 87-1549.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 13, 1988.
Decided Oct. 20, 1988.
Rehearing and Rehearing En Banc Denied in No. 87-1526 Nov. 23, 1988.
Rehearing Denied in No. 87-1549 Dec. 2, 1988.
Rehearing Denied in No. 87-1525 Dec. 20, 1988.
 
 Karen A. Greenberg, St. Louis, Mo., for appellant.
 Daniel Meuleman, Asst. U.S. Atty., St. Louis, Mo., for appellee.
 Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and STUART,* Senior District Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 An airport search uncovered cocaine and a resulting investigation led to undercover purchases of cocaine from two houses in St. Louis. As a result, Abraham Rodrequez, Omar Zulueta, Eduardo Gomez-Rodrigues, Jose Madrazo and John Arredon were convicted of possessing cocaine with intent to distribute under 21 U.S.C. Sec. 841(a)(1) and conspiring to do so in violation of 21 U.S.C. Sec. 846, and Madrazo was also convicted of traveling in interstate commerce with intent to possess and distribute cocaine in violation of 18 U.S.C. Sec. 1952. The five appellants make ten claims of error on appeal, including: improper use of peremptory strikes against blacks; refusal to grant a severance; unnecessarily suggestive identification testimony; refusal to grant a mistrial after Munoz-Wilson entered a guilty plea midway through trial; denial of a motion to compel the government to disclose the identity of a confidential informant; failure to give a cautionary instruction relating to testimony of admitted perjurers; insufficiency of evidence as to Zulueta; and several other assorted claims. We reject appellants' claims of error and affirm the judgments of conviction.
 
 
 2
 In 1985, Alejandro Munoz-Wilson and his girlfriend of three years, Jesse Baker, became involved in marijuana distribution and eventually began to process and sell cocaine. The sales were first made at Baker's house and later made at a St. Louis house on Evans Street under the direction of Jose Madrazo. Madrazo traveled to Texas, at times, to pick up the cocaine sold at the Evans Street home.
 
 
 3
 Baker became concerned about Munoz-Wilson's drug activity and his capacity for violence. In June 1986, Baker began to speak with Detective Richard Weiser to whom she explained the cocaine operation. Soon after, Baker informed Detective Weiser that Madrazo and Ann Bennett would be returning from Texas with a supply of cocaine. Special agents of the Drug Enforcement Administration stopped Madrazo and Bennett in the St. Louis airport upon their arrival from Texas. The agents searched Bennett and found cocaine hidden in her clothing, which she stated she was carrying for Madrazo. Madrazo was to deliver the cocaine to Munoz-Wilson.
 
 
 4
 Bennett was the girlfriend of Madrazo and became involved in the sale of cocaine on Evans Street in the spring of 1986. She, along with Arredon, Zulueta and Gomez-Rodrigues sold cocaine to individuals coming to that address. Aumberto Foret-Junco also sold cocaine at the Evans Street home at that time and later identified Arredon, Gomez-Rodrigues and Rodrequez as selling cocaine there and stated that he saw Zulueta at that address.
 
 
 5
 In August and September 1986 Detective Emmet Gelhot of the St. Louis Police Department, working with Detective Richard Weiser, made a number of undercover purchases of cocaine at the Evans Street home from Zulueta, Gomez-Rodrigues, Rodrequez, and Arredon. Consequently, Munoz-Wilson and the other four appellants were indicted and charged with conspiracy to possess cocaine with intent to distribute it in violation of 21 U.S.C. Secs. 841(a)(1) and 846. Madrazo was also indicted and convicted of violating 18 U.S.C. Sec. 1952 for traveling in interstate commerce with the intent to possess and distribute cocaine. Baker and Zulueta were granted immunity by the government in exchange for their testimony at trial. Munoz-Wilson entered a guilty plea before the conclusion of the trial and all others were convicted.
 
 
 6
 Insofar as further facts may be necessary to fully discuss the issues raised on appeal, we will provide further detail as required at that time.
 
 I.
 
 7
 The appellants argue that reversal is required for violations of the principles of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in that the government's peremptory jury strikes were used to remove black jurors. In making six regular and two alternative strikes, the government used four to remove white jurors and four to remove black jurors, while two black jurors remained as members of the empaneled jury. All of the defendants were black. The district court denied appellants' motion for a mistrial, stating that there had not been flagrant abuse of the jury selection process. The district court further denied appellants' request to require the government to give some justification for striking certain black jurors and stated that had the government used its entire eight challenges to remove blacks, he would have required that reasons be stated.
 
 
 8
 We held in United States v. Battle, 836 F.2d 1084 (8th Cir.1987), that to determine whether the government unconstitutionally used its peremptory challenges to discriminate in its selection of a jury panel, all relevant circumstances, including the pattern of strikes against black jurors, must be considered.[1] Here half the strikes were white and half were black. In cases involving similar numbers, we have held that no racial discrimination in the jury selection existed. In United States v. Porter, 831 F.2d 760 (8th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1037, 98 L.Ed.2d 1001 (1988), and United States v. Ingram, 839 F.2d 1327 (8th Cir.1988), one of two blacks were struck. In United States v. Montgomery, 819 F.2d 847 (8th Cir.1987), two of four blacks were struck from the jury panel. From these cases, we conclude that there was no discriminatory pattern established in this case.
 
 
 9
 Battle further held that the striking of a single black juror for racial reasons violates the equal protection clause, even though other black jurors are seated, and even if there are valid reasons for striking some black jurors. Battle, 836 F.2d at 1086. In this case the government, although not required to do so, offered justifications on the record for exercising its peremptory challenges. One juror was the relative of a police officer who had been laid off for misconduct. One spoke softly and could barely be heard and her head was shaking as if she had palsy or Parkinson's disease. One wore a chain outside his clothing in a manner which appeared odd to the prosecutor, and while this seems to be a somewhat unusual reason, the case agent also informed the prosecutor that this juror was not paying attention or understanding what was being said. Another juror had a civil suit pending against her landlord and was a pharmacist who could possibly form an independent opinion on the narcotics charges. We cannot say that, on this record, the government has not articulated racially neutral reasons for their exercise of peremptory challenges. Thus there was no Batson violation.
 
 II.
 
 10
 Appellants argue that there was misjoinder in this case, as thirteen defendants were charged in seventeen counts, including one of conspiracy. They maintain that the district court erred in not severing their trials, and Zulueta, Arredon and Madrazo state that they would have called codefendants to testify in their behalf had they been granted separate trials.
 
 
 11
 We have frequently held that those indicted together should be tried together, particularly in conspiracy cases where the same evidence is applicable to more than one defendant. See, e.g., United States v. Boyd, 610 F.2d 521, 525 (8th Cir.1979), cert. denied, 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980). While some evidence adduced at trial may have concerned fewer than all thirteen defendants, this alone does not warrant severance, see United States v. Reeves, 674 F.2d 739, 746 (8th Cir.1982), nor does the existence of stronger proof with respect to certain defendants as opposed to others. United States v. Anderson, 626 F.2d 1358, 1373 (8th Cir.1980), cert. denied, 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981). Finally, although several appellants claim that they would have called codefendants as witnesses, in no manner have they shown that exculpatory evidence would have been provided by these individuals. The district court did not err with respect to joinder and severance.
 
 III.
 
 12
 Madrazo argues that his arrest at the St. Louis airport was without probable cause and that the preceding warrantless search and seizure was unlawful. The record is clear, however, that Detective Weiser learned from Baker that Madrazo and Bennett would be arriving from Texas with cocaine. This information was relayed to DEA agents who stopped Madrazo and Bennett as they left the plane, and cocaine was discovered on Bennett. After Bennett stated that she was carrying the drugs for Madrazo, both were arrested. In such circumstances there was reasonable, articulable suspicion to support an investigative stop under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Madrazo obviously had no standing to complain of the officers' search of Bennett. When the ensuing search uncovered cocaine, and Bennett stated that she was carrying it at Madrazo's request, probable cause existed to arrest them both. See United States v. Archer, 840 F.2d 567, 574 (8th Cir.1988); United States v. Campbell, 843 F.2d 1089, 1093-95 (8th Cir.1988).
 
 IV.
 
 13
 Zulueta and Arredon argue that the police officers' investigation of them was rendered unnecessarily suggestive by the use of photographs during the investigation. Following one transaction, a confidential informant reported to Detective Gelhot the license number of a car parked outside the Evans Street house. A check of that license number revealed that the owner of the car was Omar Zulueta. Detective Gelhot then obtained a photograph from police files which was identified as that of Zulueta. Gelhot showed this photograph to another detective who stated that he had seen the pictured individual at the Evans Street house. At trial, Gelhot testified that he had also been shown a photograph of Arredon, similarly taken from police department files, and that he had examined it before making one of the cocaine purchases. Zulueta and Arredon argue that these photographic identification methods were unduly suggestive.
 
 
 14
 In pretrial hearings, Magistrate Jackson found that the identification by the detective was reliable and that the identification methods used were not impermissibly suggestive. The magistrate found that as the investigation proceeded, Detective Gelhot obtained when possible photographs of the individuals with whom he dealt, and then shared these photographs with other officers conducting surveillance. The photographs were used to verify the persons with whom they are dealing. The facts here are somewhat similar to those in Manson v. Brathwaite, 432 U.S. 98, 111-17, 97 S.Ct. 2243, 2251-54, 53 L.Ed.2d 140 (1977), and the factors outlined there have been fully satisfied in this case. Trained, attentive police officers were involved. Photographs were used at or near the time of the contact with the individuals in question. An on-going dangerous undercover investigation was under way and we recognize that it was important for the officers to identify those involved and familiarize others in their group with the appearance of these individuals. The use of the photographs was justified by the circumstances.
 
 V.
 
 15
 Appellants attack a variety of decisions made by the district court at trial. First, Madrazo, Arredon and Gomez-Rodrigues argue that the district court committed reversible error in refusing to order the disclosure of informants' identity. Madrazo argues that he was prejudiced because the name of an informant, Jesse Baker, was not disclosed prior to trial. Baker's role in the conspiracy and her identity as Munoz-Wilson's girlfriend, however, was well known to Madrazo. Furthermore, Baker testified at trial and was extensively cross-examined by the defense attorneys. We have held that any issue concerning the disclosure of an informant's identity before trial is eliminated when the person testifies at trial. United States v. Foster, 815 F.2d 1200, 1202-03 (8th Cir.1987). There was no error in the refusal to identify this informant.
 
 
 16
 Arredon and Gomez-Rodrigues similarly argue that they were prejudiced because the identity of a confidential informant present at the Evans Street home was not disclosed. This issue was addressed in pretrial hearings before Magistrate Carol Jackson, at which Detective Gelhot testified that although the informant was in the area and may have seen the individuals involved, the informant did not participate in the sales and was not a witness to the exchange of money and drugs. While the disclosure of an informant's name may be required if the informant's possible testimony is highly relevant, Roviaro v. United States, 353 U.S. 53, 60-61, 77 S.Ct. 623, 627-28, 1 L.Ed.2d639 (1957), we have held that such disclosure is not warranted where there were a series of transactions, only one of which was witnessed by the informant. United States v. Anderson, 627 F.2d 161,164 (8th Cir.), cert. denied, 449 U.S. 1021, 101 S.Ct. 588, 66 L.Ed.2d 483 (1980). Appellants further argue that the informant supplied the officers with the license number of a vehicle which was used to discover Gomez Rodrigues's name in connection with the sale of cocaine to Gelhot. Gelhot, however, had a face-to-face transaction with Gomez-Rodrigues and his identification of him was based on that meeting. We conclude that there was no abuse of discretion in protecting the identify of the informant.
 
 
 17
 Second, appellants argue that the testimony of Baker describing her relationship with Munoz-Wilson and his narcotics operations was "other crimes" evidence, highly prejudicial to them, and therefore improperly admitted. Baker, the former spouse of Munoz-Wilson, testified at length for the government, describing how Munoz-Wilson beat a person with a pistol when he came up short on money, constantly shot guns out of the windows of the house, made multiple threats to her and her children, and on one occasion fired a pistol three times at Baker's seventeen-year-old daughter. Baker also testified that she packaged and sold marijuana for Munoz-Wilson. Appellants argue that after Munoz-Wilson entered a guilty plea and was no longer in the case, the probative value of such evidence was outweighed by the prejudicial effects to the remaining defendants. They further argue that such evidence of other crimes and past wrongs is not admissible under Fed.R.Evid. 404(b). While the district court cautioned the jury that Munoz-Wilson was no longer a defendant and the jury should not consider that fact when deciding the case against the remaining defendants, appellants contend that this instruction was not a sufficient safeguard against jury speculation that the remaining defendants were guilty as well.
 
 
 18
 We believe that Baker's testimony was related to the conspiracy charge and was not other crimes evidence under Rule 404(b). Such evidence showed how the conspiracy began and functioned, Baker's role in the conspiracy, and her motivations for informing the police about the cocaine operation. We conclude that these issues involve all appellants and that the evidence was properly admitted. See United States v. Carter, 549 F.2d 77, 78 (8th Cir.1977). As to the guilty plea of Munoz-Wilson, the district court enjoys broad discretion to determine when an event so taints a trial that a mistrial should be granted. See United States v. Andrade, 788 F.2d 521, 531 (8th Cir.1986). Because appellants have failed to show that the absence of Munoz-Wilson after his plea, considered in the context of the whole trial, was so prejudicial as to deprive them of a fair trial, we hold that the district court did not abuse its discretion in denying appellants' motion for a mistrial.
 
 
 19
 Third, appellants argue that the district court erred in refusing to give an instruction relating to admitted perjurers. Appellants maintain that Bennett admitted at trial she had not identified all those involved in the cocaine conspiracy when asked to do so before the grand jury, and thus was an "admitted perjurer." The appellants contend that because the only evidence supporting the conspiracy came from accomplices, immunized witnesses, informants and perjurers, a cautioning instruction concerning admitted perjurers was required.[2]
 
 
 20
 The district court has been given wide discretion in instructing the jury, particularly with respect to credibility. United States v. Bear Ribs, 562 F.2d 563, 565 (8th Cir.), cert. denied, 434 U.S. 974, 98 S.Ct. 531, 54 L.Ed.2d 465 (1977). The instructions in this case carefully covered the area of credibility and specifically directed the jury to consider whether an inconsistency in testimony may be the result of intentional falsehood. We therefore conclude that the instructions were not erroneous.
 
 
 21
 Fourth, appellants argue that the court abused its discretion in allowing Detective Weiser, one of two government case agents, to be seated at the counsel table as the government's representative and to be called to testify during the course of the trial. Detective Weiser was called on one occasion to clarify testimony on a chain of custody of evidence and a second time concerning the surveillance of Detective Gelhot's undercover cocaine purchases. While appellants concede that the government may have one case agent at the counsel table during the trial, they argue that Weiser's testimony on several occasions was prejudicial to them. The government argues that this evidence was presented in a logical and helpful fashion within the discretion of the court. Appellants simply have not demonstrated that there was abuse of discretion in this respect.
 
 
 22
 Finally, appellants argue that the district court erred by allowing Baker, as a lay witness, to use the word "marijuana" in testifying about the beginning of the conspiracy. There is no question that Baker had experience and knowledge of marijuana and that the mention of it here was simply background to the conspiracy to sell cocaine. The argument is frivolous.
 
 VI.
 
 23
 Zulueta argues that the district court erred in denying his motion for acquittal. He contends that neither Baker nor Foret-Junco identified Zulueta as being involved in narcotics trafficking. Therefore, Zulueta argues, allegations as to his participation in the conspiracy must stand or fall on the testimony of Bennett, who had admitted to committing perjury before the grand jury. Detective Gelhot identified Zulueta as the man from whom he purchased cocaine, and Detective Weiser confirmed that identification. Bennett further testified that Zulueta was given narcotics to sell by Madrazo and would return with money. Any questions as to Bennett's credibility were properly for resolution by the jury.
 
 
 24
 Madrazo also argues that his motion for acquittal should have been granted because witnesses Bennett and Baker lacked credibility. In particular, Madrazo argues that because testimony at trial indicated that Baker had been able to pay $32,000 in cash to buy a house, she and not Madrazo was "second-in-command" of the conspiracy. Furthermore, Madrazo claims that in giving both Baker and Bennett immunity from prosecution in exchange for their testimony, the government provided these witnesses with the opportunity to "get rid of" the defendants and in so doing reap the proceeds of the conspiracy. Madrazo also argues that only Bennett had control over the cocaine and drug paraphernalia seized at the airport and that when arrested he was carrying nothing. Finally, Madrazo argues that the prosecution failed to connect him with the conspiracy by "independent evidence."
 
 
 25
 These arguments are frivolous. Both Bennett and Baker testified that they saw Madrazo obtain large amounts of cocaine from Munoz-Wilson and return proceeds after its sale. Both witnesses testified that Madrazo traveled on behalf of the conspiracy to trade money for narcotics, and that this included the time that he and Bennett were arrested at the St. Louis airport. Madrazo's argument that he was not responsible for Bennett's possession of the cocaine is met by her testimony that he gave her the drugs to carry.
 
 
 26
 We have carefully considered all of the appellants' arguments, and we find no basis for reversal. Accordingly, we affirm the judgments of conviction.
 
 
 
 *
 The HONORABLE WILLIAM C. STUART, United States District Judge for the Southern District of Iowa, sitting by designation
 
 
 [1]
 In Battle, the government used five of six peremptory challenges to strike five of seven blacks. 836 F.2d at 1085
 
 
 [2]
 The offered instruction stated: "The testimony of an admitted perjurer should always be considered with caution and weighed with great care."