UNITED STATES of America, Appellee,

v.

Reginald HUGHES a/k/a Raymond Dashun Calloway, Appellant.

No. 87–2585.

United States Court of Appeals, Eighth Circuit.

Submitted on Rehearing March 23, 1989.

Decided July 24, 1989.

James Knappenberger, St. Louis, Mo., for appellant.

Steven A. Muchnick, St. Louis, Mo., for appellee.

Before LAY, Chief Judge, and HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

HENLEY, Senior Circuit Judge.

This appeal in a criminal case was originally submitted to this same panel on September 21, 1988. Panel opinion was filed December 21, 1988. On March 23, 1989 the panel granted appellee's petition for rehearing, withdrew the original panel opinion and resubmitted the cause without further argument.

The panel originally chose to remand for consideration of the government's explanation for using its peremptory challenges to exclude three black veniremen. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We adhere to that result.

Reginald Hughes, a black man, appeals from his conviction of possession with intent to distribute heroin; and conspiracy to possess with intent to distribute, and distribution, in excess of 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. After trial to a jury, the district court[1] sentenced Hughes to imprisonment for a

---

1. The Honorable Stephen N. Limbaugh, United States District Judge, Eastern District of Missouri.

period of twelve years, to be followed by a term of supervised release for three years.

Hughes raises six issues on appeal concerning: (1) his warrantless arrest and the search and seizures of and from the apartment of David Preston; (2) the district court's refusal to give a proposed jury instruction; (3) sufficiency of the evidence on the conspiracy charge; (4) admission of certain evidence; (5) jury composition; and (6) alleged prosecutorial excesses.

Hughes makes a number of objections to the process by which the jury was selected, namely: (1) defense counsel was not allowed to conduct the voir dire himself; (2) three challenges for cause were incorrectly denied; (3) the jury selection system did not draw jurors from a fair cross-section of the community; and (4) a violation of *Batson* took place. We have reviewed the record carefully and find the first three objections to the jury selection process, listed above, to be without merit.

We need only address at this time the *Batson* issue raised concerning the composition of the jury. Hughes claims that there exists a prima facie case of unconstitutional racial discrimination by the government's peremptory striking of three blacks from the jury. The district court overruled defendant's objection at trial and stated:

> [O]f the six blacks, one was excused for cause at the request of the defendant, three were challenged on a peremptory basis by the government, and two remain on the jury.
>
> The [c]ourt does not believe that this constitutes any [c]onstitutional deprivation under *Batson* and succeeding cases, which have interpreted *Batson*. And accordingly, although some impropriety has been raised by objection by [c]ounsel for the defendant, the [c]ourt does not feel that there is any in view of the fact that two of the twelve members of the jury selected are black.[2]

The government on appeal, as did the district court, relied largely, if not exclusively, on a mathematical analysis for *Batson* challenges. While it is true that the Supreme Court declined to "formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges," *Batson*, 476 U.S. at 99, 106 S.Ct. at 1724, we have never held that the Supreme Court contemplated the use of a purely numerical formula.

■ The Supreme Court did hold that a defendant can establish a prima facie case by showing that the prosecutor exercised peremptory challenges to remove from the venire members of the defendant's race and that those facts and *"any other relevant circumstances* raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Id.* at 96, 106 S.Ct. at 1722 (emphasis added). In deciding whether the defendant has made the requisite showing, the trial court should "consider *all relevant circumstances." Id.* at 96, 97, 106 S.Ct. at 1722, 1723 (emphasis added). *See also Teague v. Lane*, —— U.S. ——, 109 S.Ct. 1060, 1066, 103 L.Ed.2d 334 (1989); *United States v. Johnson*, 873 F.2d 1137, 1139–40 (8th Cir.1989).

In *United States v. Battle*, 836 F.2d 1084, 1086 (8th Cir.1987), this court noted, "[i]n remanding this case, we emphasize that under *Batson*, the striking of a single black juror for racial reasons violates the equal protection clause, even though other black jurors are seated, and even when there are valid reasons for the striking of some black jurors." *See also United States v. Rodrequez*, 859 F.2d 1321, 1324 (8th Cir.1988); *United States v. Gordon*, 817 F.2d 1538, 1541 (11th Cir.1987), *vacated in part on other grounds*, 836 F.2d 1312 (11th Cir.), *cert. dismissed*, —— U.S. ——, 109 S.Ct. 28, 101 L.Ed.2d 979 (1988); *United States v. David*, 803 F.2d 1567, 1571 (11th Cir.1986).[3]

---

**2.** Tr. of Jury Trial, Oct. 5, 1987, Vol. I at 1–49.

**3.** In its brief to this court, the government cites three cases that allegedly support the use of a numerical formula for determining if the defendant has made a prima facie showing of pur-

poseful discrimination. For example, the government cites *United States v. Dennis*, 804 F.2d 1208 (11th Cir.1986), *cert. denied*, 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987), for the proposition that the government's action in striking three blacks out of five prospective

At base the question before us is whether the defendant made a prima facie showing of purposeful discrimination. The *Batson* decision placed great confidence in a trial judge's ability to identify a prima facie case of race discrimination. 476 U.S. at 97, 99 n. 22, 106 S.Ct. at 1723, 1724 n. 22. However, as indicated, the government and the district court here gave undue, if not exclusive, weight to the fact that two blacks served on the jury and left us without benefit of the trial court's views concerning other aspects of the discrimination issue. Thus, we turn to the record.

■ There were six blacks on the original jury panel. One of these jurors was struck for cause at defendant's request. The government then exercised its peremptory challenge to three of the remaining five black jurors. During voir dire one of these three jurors, Gwenda Payne, never spoke, *i.e.*, she did not answer affirmatively to any of the district court's questions calculated to determine bias or prejudice. Yet, as we read the voir dire, others did not answer and some of those who did not answer appear to have served on the petit jury.

A second of the blacks challenged, Booker Washington, had served as a juror in city court and had been a victim of a burglary eight years earlier. Mr. Washington stated that his experience as a victim of crime would not interfere with his ability to hear and fairly decide this case. About half of the venire similarly had been crime victims and several had prior jury service. No good non-racial reason for challenge is reflected in this record or even suggested.

The third challenged black, Mrs. Bloodsaw, stated that she had a family member who was convicted of a felony some fifteen years before. Neither the relationship nor the nature of the felony is identified in the record. Mrs. Bloodsaw stated that she would not be prejudiced against either the government or the defendant. She had once been on a civil venire but had not been chosen to serve on a petit jury. Both she and her husband are employed in respectable occupations.

There is some authority for the proposition that family misconduct may amount to a valid reason for a juror challenge. *See, e.g., United States v. Vaccaro,* 816 F.2d 443, 457 (9th Cir.), *cert. denied,* 484 U.S. 914, 108 S.Ct. 262, 98 L.Ed.2d 220 (1987). Indeed, we have held recently that challenge because the juror was related to a police officer who had been laid off for misconduct was valid. *United States v. Rodrequez,* 859 F.2d at 1324. In *Rodrequez,* however, the government undertook to give, and did give, its reasons for challenge to the trial court, *id.,* a practice we certainly do not condemn.

Were the Bloodsaw challenge the only problem, we might be tempted to accept the government's belated explanation and pass on to other aspects of the case. However, the totality of the circumstances leaves us with the conclusion that the record as a whole requires a finding that the defendant has established a prima facie case of racial discrimination.

■ *Batson* therefore shifts the burden to the government to now come forward with a neutral explanation for its challenges to these black jurors. *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723. Accordingly, we remand with instructions that the district court hold a hearing to afford the government the opportunity to explain the peremptory strikes of the black veniremen in question. Hughes will then be given the

black jurors did not establish a prima facie case of racial discrimination. The government also relies on two of this circuit's cases, *United States v. Porter,* 831 F.2d 760, 767–68 (8th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1037, 98 L.Ed.2d 1001 (1988) (no prima facie case established by the fact that the government struck one out of two black jurors); and *United States v. Montgomery,* 819 F.2d 847, 850–51 (8th Cir. 1987) (government's striking two out of four blacks from the jury did not raise an inference of racial discrimination). We feel these cases suggest that numbers alone do not establish a prima facie case. However, the converse is true as well; the numbers alone do not affirmatively negate a prima facie case. In addition neither *Porter* nor *Montgomery* explores the voir dire of those jurors who were stricken. Indeed, we are told in *Batson* that voir dire may support or refute an inference of discriminatory purpose. 476 U.S. at 97, 106 S.Ct. at 1723.

opportunity to demonstrate that the government's proffered reasons are pretextual. *United States v. Wilson*, 816 F.2d 421, 423 (8th Cir.1987). The district court should hold such hearing within a reasonable time and certify its findings back to the panel of this court.[4] We hold in abeyance any further ruling on the other issues raised on appeal until the evidentiary hearing is held and the ruling so certified. *See Battle*, 836 F.2d at 1086.

---

**4.** We commend to the government and to the court consideration of the comment in *United States v. Johnson* as follows:

Should such situations occur in the future, where the district court considers the issue to be close, conservation of judicial resources might well justify inquiry of the government attorney as to the reasons for making a strike. The district court may then wish to consider whether the reasons should be stated and a ruling be made as to their validity. Thus, the record would be complete on appeal for consideration of the *Batson* issue, without the possibility of remand and a later reconstruction of the record, as is necessary in this case. 873 F.2d at 1140.