UNITED STATES of America, Appellee,

v.

Andre MONTGOMERY, a/k/a Andre Montgomery Bey, Appellant.

No. 86–1809.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1986.

Decided May 26, 1987.

---

R. Thomas Day, Asst. Federal Public Defender, St. Louis, Mo., for appellant.

Richard Poehling, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before JOHN R. GIBSON, FAGG, and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

Andre Montgomery appeals from the district court's order sentencing him to fifteen years' imprisonment with no probation under the Armed Career Criminal Act of 1984, 18 U.S.C. app. § 1202(a) (Supp. III 1985), based on a jury verdict convicting him of being a felon in possession of a firearm, in violation of 18 U.S.C. app. § 1202(a)(1) (1982). For reversal, he argues (A) the district court committed various sentencing errors; (B) the government used its peremptory challenges to reduce the number of black jurors, in violation of his fifth and sixth amendment rights; (C) the court erred in instructing the jury on the definition of possession; and (D) the court erred in denying his motion for mistrial based on the government's reference to his failure to testify. For the reasons discussed below, we affirm Montgomery's conviction and remand for resentencing.

## I. BACKGROUND.

On December 15, 1985, St. Louis police officer Timothy Lachenicht observed a car parked in the middle of DeSoto Street, while he was patrolling the area. Lachenicht approached the car and asked the female in the driver's seat for her license. Montgomery, who was seated in the rear seat on the passenger side, said "start driving." Montgomery then removed a handgun from his waistband and placed it beneath the front seat. Lachenicht ran around the car to the passenger door and pulled Montgomery out of the car.

Lachenicht unloaded the gun, finding it contained six live rounds of .38 caliber ammunition. A subsequent search revealed four more live rounds of ammunition in Montgomery's trouser pocket.

On March 6, 1986, Montgomery was indicted for possession of a firearm by a person having three prior felony convictions, in violation of 18 U.S.C. app. § 1202(a)(1). At his arraignment, the government filed a notice informing Montgomery he was subject to the enhanced sentencing provisions of the Armed Career Criminal Act because of his prior criminal history.

Following a jury trial, on May 19 and 20, 1986, Montgomery was convicted of the possession charge. The district court sentenced him to fifteen years' imprisonment with no parole, the minimum sentence under the enhanced sentencing provisions of the Armed Career Criminal Act. This appeal followed.

## II. DISCUSSION

### A. Sentencing.

Montgomery argues that the district court erred in sentencing him under the enhanced punishment provisions of section 1202(a)(1), because the government failed to prove the requisite three prior convictions for burglary and robbery.[1] Mont-

---

1. The statute provides:
 (a) Any person who—
 (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, or
 (2) has been discharged from the Armed Forces under dishonorable conditions, or
 (3) has been adjudged by a court of the United States or of a State or any political subdivision thereof of being mentally incompetent, or

 (4) having been a citizen of the United States has renounced his citizenship or,
 (5) being an alien is illegally or unlawfully in the United States,
 and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both. In the case of a person who receives, possesses, or transports in commerce or af-

gomery contends the statute requires three separate prior adjudications for these crimes and claims that only one prior adjudication was shown at his trial. Montgomery was convicted of three counts of robbery and sentenced on October 15, 1979. Two of these counts involved a single robbery of two people.

■ The government has since conceded in another section 1202(a) case that multiple convictions arising out of a single criminal episode should be treated as one conviction for purposes of the Armed Career Criminal Act. *See* Response to Petition for Writ of Certiorari, Brief for the United States at 4–10, *Samuel Petty v. United States, petition for cert. filed* (U.S. Jan. 21, 1987) (No. 86–6363). Consistent with its position in *Petty,* the government now concedes that Montgomery was sentenced improperly.[2] We therefore remand Montgomery's case for resentencing under the provisions of section 1202(a) applicable to persons not having three previous convictions. *See* 18 U.S.C. § 1202(a). We need not consider Montgomery's remaining sentencing claims.

### B. Discriminatory Use of Peremptory Challenges.

Montgomery, who is black, contends the district court erred in denying his motion, made prior to the swearing in of the jury, to dismiss the jury panel. He argues that the government used a disproportionate number of its peremptory challenges to substantially reduce the number of black jurors, in violation of his fifth and sixth amendment rights under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (*Batson* ).

There were a total of four black persons available for selection as jurors, making up 14% of the venire. The government used two of its six strikes (33%) to eliminate two of the four black members of the venire. The defendant then used one peremptory challenge to strike one of the two potential remaining black jurors, so that the actual jury consisted of eleven whites and one black.

Although the jury accepted by the government included two blacks, Montgomery asserts that these percentages indicate that black members of the jury panel were peremptorily struck at a rate in excess of double of that which a proportionate striking of blacks would have resulted in. He requests that his case be remanded pursuant to *Batson* for the district court to determine whether he has a *prima facie* case of purposeful discrimination and whether the government had permissible reasons for the strikes.

■ Based on the Supreme Court's holding in *Griffith v. Kentucky,* —— U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), this court may apply *Batson* retroactively to cases in which the conviction had not yet become final on direct appeal by April 30, 1986, when the Court decided *Batson.* To make an equal protection claim under *Batson,* a defendant must establish a *prima facie* case of purposeful discrimination. To establish such a case, the defendant must

---

fecting commerce any firearm and who has three previous convictions by any court referred to in paragraph (1) of this subsection for robbery or burglary, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under this subsection, and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

18 U.S.C. app. § 1202(a) (1982 & Supp. III 1985).

**2.** Referring to the government's response brief in *Petty,* the United States District Attorney for the Eastern District of Missouri has informed this court:

> That position directly impacts on the *Montgomery* case. In *Montgomery* the defendant had a criminal record of three felony robbery convictions. Two of those convictions, however, arose from a single incident involving a simultaneous robbery of two individuals. Accordingly, it is the Government's position that *Montgomery* would not be subject to the enhanced punishment provision of the Armed Career criminal legislation.

Letter from Thomas E. Dittmeier, United States Attorney for the Eastern District of Missouri, to Robert St. Vrain, Clerk, United States Court of Appeals for the Eighth Circuit (April 23, 1987).

show, among other things, that the government's use of its peremptory challenges and any other relevant circumstances raise an inference that the government excluded prospective jurors on the basis of their race.

 The facts and circumstances in the present case do not raise such an inference of racial discrimination. The fact that the government accepted a jury which included two blacks, when it could have used its remaining peremptory challenges to strike these potential jurors, shows that the government did not attempt to exclude all blacks, or as many blacks as it could, from the jury. *Cf. United States v. Dennis*, 804 F.2d 1208, 1211 (11th Cir.1986) (per curiam) (government's striking of three blacks not *prima facie* purposeful discrimination where government accepted two blacks on jury). *Batson* does not require that the government adhere to a specific mathematical formula in the exercise of its peremptory challenges. Accordingly, we hold that the district court did not err in denying Montgomery's motion to dismiss the jury panel.

**C. Instruction on Possession.**

Montgomery asserts that the district court improperly refused his requested theory of defense instruction No. 14 which stated:

> A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it.
>
> Unless you find that the evidence proves beyond a reasonable doubt that Andre Montgomery knowingly had direct physical control over the firearm in question as opposed to simply showing that he was in close physical proximity to a firearm that some other occupant of the automobile had possession of, you shall find him not guilty.

In place of this instruction, the district court charged the jury in instruction No. 10–D that:

> The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it.
>
> A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.
>
> The law recognizes also that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.
>
> You may find that the element of possession as that term is used in these instructions is present if you find beyond reasonable doubt that the defendant had actual or constructive possession, either alone or jointly with others.

Montgomery claims there was no need to instruct the jury on constructive and joint possession, because those were not issues raised by the government's case. He also asserts that he was entitled to have the second paragraph of his requested instruction read, because it set forth his theory of defense, that Donald Houston, the owner of the vehicle in which the gun was found, was in fact guilty. Montgomery's theory was based on two allegedly false exculpatory statements by Houston. Houston testified at trial that he did not make either of the statements, however.

 In reviewing the adequacy of the district court's jury instruction, this court considers three criteria. First, the purpose of giving instructions is to inform the jurors of the essential issues before them and of the various permissible ways of resolving those issues. *Federal Enterprises, Inc. v. Greyhound Leasing & Financial Corp.*, 786 F.2d 817, 820 (8th Cir.1986); *see also United States v. Richmond*, 700 F.2d 1183, 1195–96 (8th Cir.1983) (defendant not entitled to a particularly worded instruction). Second, a party is entitled to an instruction reflecting the party's theory of the case if a timely request is made and the proffered instruction is supported by the

evidence and correctly states the law. *Id.* Third, this court allows the district court judges considerable discretion in choosing the form and language of jury instructions. *Federal Enterprises,* 786 F.2d at 820; *Richmond,* 700 F.2d at 1196.

■ The district court did not abuse its discretion in denying Montgomery's proffered instruction No. 14. The instruction used by the court accurately stated the law on actual and constructive possession. *See United States v. Henneberry,* 719 F.2d 941, 945 (8th Cir.1983), *cert. denied,* 465 U.S. 1107, 104 S.Ct. 1612, 80 L.Ed.2d 141 (1984) (stating elements of constructive possession in case alleging possession of stolen goods); *Sewell v. United States,* 406 F.2d 1289, 1293 & n. 3 (8th Cir.1969) (approving identical instruction). The government's case was based on a theory of constructive possession in that it alleged that officer Lachenicht had seized the gun from under the car seat in front of Montgomery. Montgomery's proffered instruction thus did not adequately state the applicable law on possession, because it did not include a statement of the elements of constructive possession. Further, the evidence regarding Montgomery's theory of defense was contradictory, because Houston testified that he never made the statements which Montgomery claimed were exculpatory. We thus hold that the district court did not abuse its discretion in refusing Montgomery's proffered instruction.

### D. References in Closing Argument to Defendant's Failure to Testify.

Montgomery argues the district court erred in denying his motion for mistrial, "based on the government's numerous comments [during closing argument] that certain items are not disputed." (Supp. Tr. 6.) Montgomery objected and moved for mistrial after the following argument by the government:

I anticipate the judge is going to instruct you that there are going to be three elements that you have to find to help you reach a verdict.

The first element is going to be that the defendant was a convicted felon: if you believe from the evidence beyond reasonable doubt whether or not he was a convicted felon. Now, when you reach that point, ask yourself what is the evidence in the case, in the whole case, defendant's case as well as the government's case, with respect to that issue. *What evidence do we have as to whether or not he's a convicted felon?*

The evidence you have is these exhibits, Government's Exhibits 3, 4, and 5. Now, Government's Exhibit 3 are [sic] the certified records of the court showing that in 1979 Andre Montgomery was convicted three times of the offense of robbery in the first degree. I anticipate Judge Hungate in his instructions will tell you that robbery is a felony under the laws of the State of Missouri.

Beyond this court document, we have the records of the Missouri Department of Corrections, the penitentiary, which indicates that Andre Montgomery was received in connection with those prior felony convictions, that he was received by the Division of Corrections and they attached a fingerprint card on there.

Now, you heard the testimony of Mr. Fitzpatrick who is a fingerprint examiner. And he said: I examined these fingerprints that came from the penitentiary of the Andre Montgomery that was sent in connection with the robbery charges and I compared it with the fingerprints that were taken when Andre Montgomery was arrested on this charge, and I can tell you through my expert opinion that it is the same man. These prints here taken in 1985 when he was arrested are the same as was taken previously and was attached to the penitentiary records [sic].

*So ask yourself, is there any evidence to the contrary that Andre Montgomery is a convicted felon.* I submit to you there is no evidence to the contrary on the first point.

The second point, that whether or not he knowingly possessed a firearm. And I will return to that one in just a second.

The third one is [whether] the firearm was in or affecting interstate commerce.

*Ask yourself what evidence do we have on that,* that the firearm traveled in interstate commerce. You have the evidence of the testimony of Officer Stubits who's a firearms examiner who has examined thousands of firearms. He testified for you as an expert that this particular weapon, Government's Exhibit 2, was made in the State of Florida. And he testified therefore, in order for it to reach Missouri, it had to travel in interstate commerce from one state to another. *Ask yourself, is there any evidence to the contrary.* I submit to you there's no evidence to the contrary in this case.

I further anticipate that Judge Hungate will advise you in your instructions that that is sufficient. If you find and believe that that weapon was manufactured outside the State of Missouri, then the government has satisfied its proof that it's traveled in interstate commerce to get here. *So I don't think that's really disputed. So two of the three, I don't think, are disputed.* Mr. Day may dispute it and he'll have an opportunity, if he does, to do so.

The remaining one was whether or not Andre Montgomery knowingly possessed the firearm when it was taken from him when the officer saw him on December 15, 1985. To resolve that question, we have to look at the evidence again. First of all, with respect to whether or not a particular weapon was a firearm. *I don't think there's any dispute about that.* Anybody that's ever seen a weapon before like this, Officer Stubit said, "I test fired it, it worked." Tim Lachenicht said, "It was fully loaded when I found it." Officer Stubits said, "That is a firearm within the definition of the federal firearms law." *So I don't think it's disputed that it's a firearm.*

(Supp. Tr. 3–6.) (Emphasis supplied.) Montgomery argues that these comments violated his fifth amendment rights not to testify and not to produce evidence, by implying that he had the burden of proving the falsity of the government's allegations.

■ A direct comment by the government on a defendant's failure to testify violates the fifth amendment privilege against self-incrimination. *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965); *United States v. Nabors,* 762 F.2d 642, 649 (8th Cir.1985). Indirect references to the defendant's failure to testify are also impermissible if they either "(1) manifest the prosecutor's intention to call attention to the defendant's failure to testify, or (2) are such that the jury would naturally take them as a comment on the defendant's failure to testify." *United States v. Durant,* 730 F.2d 1180, 1184 (8th Cir.), *cert. denied,* 469 U.S. 843, 105 S.Ct. 149, 83 L.Ed.2d 87 (1984). "Both tests require attention to the context of the prosecutor's remarks—the argument itself, and the larger context of the evidence introduced at trial." *Id.* In addition, the district court has broad discretion in dealing with closing arguments. *United States v. Apker,* 705 F.2d 293, 309 (8th Cir.1983).

The comments in question clearly related to the government's proof of (1) Montgomery's prior convictions and (2) his possession of a firearm in commerce and affecting commerce. The trial transcript indicates that the government was arguing that the only reasonable inference to be drawn from the evidence was that Montgomery was guilty of the allegations in the indictment. This was not an impermissible argument under *Griffin v. California, supra.*

■ Thus, in the entire context of the closing argument and the evidence introduced at trial, it strains credulity to argue the government's comments were calculated to call attention to Montgomery's failure to testify, or that the jury would necessarily take them as a comment on his failure to testify. Accordingly, we hold that the district court did not abuse its discretion in refusing to declare a mistrial.

### III. CONCLUSION.

Montgomery's conviction is affirmed and his case is remanded for resentencing under 18 U.S.C. app. § 1202(a) (1982 & Supp. III 1985).