**UNITED STATES of America, Appellee,**

v.

**James Lamont JOHNSON, Appellant.**

No. 88–2225.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 11, 1989.

Decided May 2, 1989.

Jolene Pettus, St. Louis, Mo., for appellant.

David Rosen, St. Louis, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

BRIGHT, Senior Circuit Judge.

James Lamont Johnson appeals from a final judgment entered in the district court for the Eastern District of Missouri upon a jury verdict finding him guilty of escape from lawful custody in violation of 18 U.S. C. § 751(a). On appeal, Johnson alleges, *inter alia*, that the district court erred in, (1) failing to dismiss his indictment because he fulfilled the terms of a non-prosecution agreement and (2) failing to find that he established a prima facie case of race discrimination in the selection of his jury panel pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We decide that Johnson established a prima facie case of discrimination under *Batson*, and accordingly remand with instructions.

Before discussing the *Batson* issue, we briefly address Johnson's contention that the district court erred in failing to dismiss his indictment.

## I.  DISCUSSION

### A.  Dismissal of Indictment/Non–Prosecution Agreement

In 1986, Johnson pled guilty to the federal offenses of making false statements, failure to appear, and stealing personal property in violation of 18 U.S.C. §§ 1001, 3141–50, and 661, respectively, and received a sentence of three years imprisonment. In February 1987, the Bureau of Prisons transferred Johnson to the Dismas House, a halfway house in St. Louis, Missouri.

On May 5, 1987, Johnson "walked away" from the Dismas House. The Kinloch, Missouri police arrested Johnson on June 12, 1987. Later that day, a federal marshall service investigator interviewed Johnson. Johnson, in response to the investigator's questions, volunteered that he knew a Michael David Henderson, a seven-year federal fugitive. Johnson agreed to meet again with federal officials to discuss Henderson.

Although Johnson and the Government did not execute a non-prosecution agreement, they orally agreed that if Johnson provided a current location that led to Henderson's apprehension, the Government would not prosecute Johnson for the escape, and if Johnson passed a polygraph examination concerning his willingness to aid in Henderson's apprehension, the Government would recommend that Johnson be placed in a halfway house.

During June of 1987, Johnson met twice with federal officials and told them that he had seen Henderson at an address on Suburban Street in Kinloch, Missouri, and provided other information concerning certain of Henderson's associates and vehicles. In July 1987, Johnson took a polygraph examination. At the conclusion of the test, the examiner indicated that he believed Johnson was being untruthful regarding his willingness to cooperate in Henderson's apprehension. Thereafter, Johnson was incarcerated in a federal penitentiary.

Pursuant to an anonymous telephone call from a female, federal officials on August 11, 1987, arrested Henderson in Chicago, Illinois.

On appeal, Johnson argues that the district court erred in failing to grant his motion to quash the indictment. Johnson asserts that he fulfilled the terms of the non-prosecution agreement because he provided the Suburban Street address and other information concerning Henderson. We disagree. Although Johnson provided a St. Louis location and other information, that information did not lead to Henderson's arrest in Chicago. That arrest resulted from an anonymous tip. Because Johnson failed to fulfill the terms of the non-prosecution agreement, the district court did not err in failing to grant his motion to quash the indictment. *See United States v. Amy Frances Johnson*, 861 F.2d 510, 512–13 (8th Cir.1988) (specific performance of non-prosecution agreement inappropriate unless, *inter alia*, defendant complies with terms of agreement).

## B. *Batson* Issue

■ Johnson also alleges that the district court erred in failing to find that he established a prima facie case of race discrimination in the selection of the jury panel under *Batson v. Kentucky*. The claim has merit.

In *Batson*, the Supreme Court held that in deciding whether a defendant has established a prima facie case, "the trial court should consider all relevant circumstances", including "a 'pattern' of strikes against black jurors included in the particular venire" and "the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges * * *." *Batson*, 476 U.S. at 96–97, 106 S.Ct. at 1722–1723.

Of its six peremptory challenges, the Government used two to exclude two black veniremen of a panel of twenty-eight. The two black veniremen did not respond to any questions nor did four white veniremen who were selected as jurors. At least two blacks remained on the jury panel. In addition, the Government used its one peremptory challenge to alternate jurors to strike a black, who also made no response to voir dire questions.

After the Government exercised the strikes, Johnson requested that the district court require the Government to articulate its reasons for striking the black veniremen. The Government responded it need not articulate a reason if two blacks remained on the panel. The district court cautioned the Government that if its position was "in error, it would redound to the defendant's benefit." The court then ruled that the Government need not articulate an explanation for striking the blacks as jurors.

The *Batson* decision placed confidence in a trial judge's ability to identify a prima facie case of race discrimination. 476 U.S. at 97, 99 n. 22, 106 S.Ct. at 1723, 1724 n. 22. However, in this case the district court accepted the persistent argument of the Government based on numbers alone, and in doing so the ruling rested upon an erroneous view of the law.

■ We reject the Government's contention made in the district court and here that the mere presence of two blacks on a jury automatically negates a *Batson* violation. In *United States v. Battle*, 836 F.2d 1084, 1086 (8th Cir.1987), this court "emphasize[d] that under *Batson*, the striking of a single black juror for racial reasons violates the equal protection clause, even though other black jurors are seated, and even when there are valid reasons for the striking of some black jurors."[1] *See also, United States v. Clemons*, 843 F.2d 741, 748 (3d Cir.1988) ("Nor can we conclude

---

1. There is some confusion over whether two or three blacks remained on the jury. Apparently at the time Johnson made his *Batson* objection, the parties believed three blacks remained on the panel. However, when the jury was brought into the courtroom, Johnson stated he believed a particular juror was not black. The district court found it unnecessary to determine the race of the juror because at least two blacks remained on the panel.

At oral argument, the Government requested that this court address the necessity of determining the racial composition of a jury panel. We decline to do so. We believe the Government's request illustrates its misreading of *Batson*. As made clear in *Battle*, a *Batson* inquiry focuses on whether or not racial discrimination exists in the striking of a black person from the jury, not on the fact that other blacks may remain on the jury panel.

that the inclusion of blacks on a jury bars a prima facie case, especially where other facts and circumstances may constitute an inference of prosecutorial discrimination in the selection process"), *cert. denied,* —— U.S. ——, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988). "[T]he command of *Batson* is to eliminate, not merely to minimize, racial discrimination in jury selection." *United States v. David,* 803 F.2d 1567, 1571 (11th Cir.1986), *on remand,* 662 F.Supp. 244 (N.D.Ga.1987), *aff'd,* 844 F.2d 767 (11th Cir.1988).

■ In this case, the voir dire record does raise the inference of discrimination as the Government struck black veniremen at a disproportionate rate and struck blacks who did not respond during voir dire but did not strike whites who similarly did not respond. Although in *United States v. Montgomery,* 819 F.2d 847, 850–51 (8th Cir.1987), the court determined that a disproportionate use of peremptory challenges against blacks did not raise an inference of discrimination, that decision did not consider any voir dire responses or failure to respond by both black and white persons. In *United States v. Montgomery,* as distinguished from this case, the Government did not use all of its peremptory challenges, allowing this court to conclude that the Government "did not attempt to exclude all blacks, or as many blacks as it could." 819 F.2d at 851.[2] Although numbers alone neither make a prima facie case nor negate a prima facie case, the rate at which black veniremen are struck compared to whites with other relevant evidence may weigh in determining whether a defendant has established a prima facie case. Here, considering the record before the district court, we conclude that it erred in accepting the Government's numbers only argument and in ruling that defendant had not made a prima facie case.

Under *Batson,* "[o]nce the defendant makes a prima facie showing, the burden shifts to the [Government] to come forward with a neutral explanation for challenging black jurors." 476 U.S. at 97, 106 S.Ct. at 1723. Thus, the district court should have required the Government to explain its peremptory strikes of potential black jurors.

## II. CONCLUSION

Accordingly, we remand with instructions that the district court hold a hearing to afford the Government the opportunity to explain the peremptory strikes in question of the two black veniremen. Johnson will then be given the opportunity to demonstrate that the Government's proffered reasons are pretextual. *United States v. George Wilson,* 816 F.2d 421, 423 (8th Cir. 1987). The district court should hold such hearing within a reasonable time and either grant Johnson a new trial if the *Batson* violation is established, otherwise, reinstate the conviction by entering a new judgment. *Id.*

We have reviewed Johnson's other claims and find them to be without merit.[3]

Remanded.

---

**2.** The Government relies heavily on *Montgomery* as well as *United States v. Byrd,* 804 F.2d 1204, 1210 (11th Cir.1986), where the government did not utilize all of its challenges. *United States v. Rogers,* 850 F.2d 435 (8th Cir.1988), reveals no facts or circumstances other than the numbers.

**3.** This case is a particularly close one. The district judge, as previously observed, indicated that the Government's contention on the *Batson* issue, might be erroneous.

Should such situations occur in the future, where the district court considers the issue to be close, conservation of judicial resources might well justify inquiry of the government attorney as to the reasons for making a strike. The district court may then wish to consider whether the reasons should be stated and a ruling be made as to their validity. Thus, the record would be complete on appeal for consideration of the *Batson* issue, without the possibility of remand and a later reconstruction of the record, as is necessary in this case.