Jane DOE, Plaintiff,

v.

VILLAGE OF DOWNERS GROVE, a municipal corporation, Sergeant William F. Burnham, in his official and personal capacities, Officer T. Niewold, in his official and personal capacities, Officer Sedivey, in her official and personal capacities, Defendants.

No. 91 C 2722.

United States District Court,
N.D. Illinois.

July 30, 1992.

Michael Keith Fridkin, Maureen A. Mosh, Ellen Beth Katzman, Sachnoff & Weaver, Ltd., Chicago, IL, for plaintiff.

Richard T. Ryan, Mark F. Smolens, Richard L. Jones, Flynn, Murphy, Ryan & Seyring, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

### BACKGROUND

This case reflects the administrative difficulties a trial court faces in conscientiously effectuating the Supreme Court's directive that racial discrimination shall not be permitted in the jury selection process.

On February 27, 1992, a jury returned a $55,000 verdict against two white Downers Grove police officers, William F. Burnham and Todd Niewold (collectively, "defendants"), for violating the fourth amendment rights of plaintiff "Jane Doe," who is black, by ordering that she be strip searched without lawful justification.[1] In addition, the jury assessed punitive damages in the amount of $1.00 against each defendant.

On May 20, 1992, the court granted defendants' motion for a new trial, based on a finding that it committed error in disallowing defendants' unexplained peremptory challenges against two black prospective jurors. At trial, defendants refused to comply with the court's instruction that defendants must accompany any peremptory challenge against

---

1. Because of the personal embarrassment occasioned by the conduct at issue, plaintiff is identified in the pleadings as "Jane Doe." Plaintiff and her teen-aged daughter used their true names at trial.

a black prospective juror with a race-neutral explanation at sidebar. The court granted defendants a new trial because a *prima facie* showing of racial discrimination had not been made (nor requested by plaintiff) when the court first instructed defendants to provide race-neutral justification for striking black prospective jurors. For this reason, the court concluded that defendants were improperly denied their statutory right to exercise three peremptory challenges. *See* 28 U.S.C. § 1870.

Plaintiff now moves the court to reconsider its order granting defendants a new trial, citing recent decisions not previously submitted by the parties in briefing the motion for a new trial. These recent cases were not considered by the court in rendering its decision. Plaintiff contends these cases demonstrate that the challenged procedure was not erroneous and that the court properly effectuated the Supreme Court's directives against racial discrimination in the jury selection process enunciated in *Edmonson v. Leesville Concrete Co.,* — U.S. —, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) and *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

### *DISCUSSION*

#### A. The Court's Refusal to Allow Defendants' Peremptory Challenges of Two Black Prospective Jurors

■ Defendants, who allegedly abused their authority as police officers, are white. Plaintiff, who was allegedly victimized by the unreasonable strip search ordered by defendants, is black. The incident occurred in a predominantly white suburban community. In preparing for its *voir dire* examination of prospective jurors, the court recognized the clear racial implications of the case, even though plaintiff did not expressly assert a race-based claim. Consequently, before the jury venire was brought to the courtroom on the first morning of trial, the court reminded counsel that the Supreme Court's decision in *Edmonson* extended application of the *Bat-*

*son* prohibition against the racially discriminatory use of peremptory challenges to civil cases. Trial transcript ("Tr.") at 2–3. Specifically, the court stated:

> We will be moving a little bit slower today than I usually do because my clerk is ill. So first thing, we have a substitute clerk [who] went down to pick up the jury. But we had a couple of preliminary matters I wanted to discuss with you.
>
> One has to do with *Batson v. Kentucky,* which the Supreme Court this past year held applies to civil cases.[2] And I'm referring to *Edmondson (sic) versus Leesville Concrete Company,* [— U.S. —], 111 S.Ct. 2077. And what this means in terms of this case is that if the defense wants to challenge, exercise any peremptive challenges as to a prospective juror who is black, **I will need an offer at sidebar as to what nonracial basis you are invoking for excluding the juror.**
>
> **So what this means in terms of jury selection is that when the panel is tendered to you, if you do wish to exclude a prospective juror who is black, please ask for a sidebar so you can state your reasons and I can make a determination whether or not they are sufficient under *Batson* or under *Edmundson* (sic). But I thought we'd better make that clear before we started.**

*Id.* (Emphasis supplied).

Defendants neither questioned nor objected to the court's procedure for exercising peremptory challenges against black prospective jurors. *Id.* Nevertheless, two of the three prospective jurors peremptorily challenged by defendants on a handwritten list tendered to the court's clerk were against black persons. Defendants did not request a sidebar to explain their race-neutral justification for challenging these two black prospective jurors.

In the ordinary course, the clerk would have read the names of the challenged jurors and excused them. Since there were black

2. As noted in this court's opinion granting defendants' motion for a new trial, the Seventh Circuit applied *Batson* to a civil case even before the Supreme Court did so in *Edmonson. See Dun-* *ham v. Frank's Nursery & Crafts, Inc.,* 919 F.2d 1281 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2797, 115 L.Ed.2d 970 (1991).

persons on the panel and there was a possibility that *Batson* might be implicated, the court examined the lists of peremptory challenges before any jurors were excused. The court then called a sidebar to inform counsel that it was disallowing defendants' peremptory strikes against the two black prospective jurors because defendants had failed to request a sidebar and proffer any race-neutral justification. Tr. 59–60. Notwithstanding the court's explicit instructions just before jury selection began, both defense counsel repeatedly insisted that the court had not directed them to request a sidebar for this purpose.

MR. RYAN: I'm sorry, your Honor. I thought your Honor said you would not have a sidebar. You did not say we should request a sidebar.

MR. SMOLENS: Judge, are you referring (sic) that there has been a prima facie [case]? There are four black jurors, we exercised peremptories as to two.

THE COURT: You didn't ask for a sidebar. You didn't give me any nonracial justification.

MR. RYAN: Well, your Honor—

THE COURT: **What is your nonracial justification for these two?**

MR. SMOLENS: First of all, Judge, there hasn't been a prima facie Batson case yet. You did not instruct them (plaintiff's counsel) that they couldn't exclude white jurors for nonracial reasons.

\* \* \* \* \* \*

MR. RYAN: Your Honor, I'm sorry, but your Honor did not indicate we had to ask for a sidebar.

THE COURT: I asked very clearly for you to indicate—well, perhaps you should order a transcript. You'll have that opportunity. . . .

MR. RYAN: I think, I'm not sure the record has reflected, however, that the defendants did exclude a white juror and the defendants have accepted two black jurors in the first, among the first six jurors. And I don't think there is any basis at all for not allowing the defendants to exclude—

THE COURT: Then you should have raised, when I discussed that issue with you before we even began the jury selection procedure, if you had an objection to the plaintiff's excluding white jurors you should have said something.

MR. SMOLENS: I will move for a mistrial at this time.

THE COURT: As far as I—

MR. RYAN: We have to move for a mistrial.

THE COURT: Denied. Denied.

MR. SMOLENS: Fine.

Tr. 60–61. (Emphasis supplied.)[3]

Thus, even when defendants were given another opportunity to state race-neutral reasons for striking two black prospective jurors at a sidebar called by the court, they refused to do so. Instead, defendants prevaricated. First, they claimed that they either misunderstood or did not hear the court's instructions for explaining any strikes against black prospective jurors. Then they claimed that there was no *prima facie Batson* showing because they used one of their three peremptory challenges against a white prospective juror, even though there was at least another black person on the panel.[4] Finally, defendants argued that plaintiff was not required to comply with *Batson* and she was permitted to excuse three white prospective jurors. When these arguments failed, defendants moved for a mistrial. At no time

---

3. Defense counsel's misinterpretation of the court's instructions is particularly difficult to understand or credit, given the fact that the court stated *twice* before jury selection that defense counsel should ask for a sidebar to challenge black prospective jurors. Tr. at 2–3. Moreover, at the final pretrial conference, the court encouraged counsel to request sidebars during trial to eliminate the risk of prejudice or a mistrial. Transcript of Proceedings, February 14, 1992 at 15–16.

4. The parties now dispute the number of black persons on the jury panel. Defendants claim there were four; plaintiff claims there were only three. At this juncture, the court does not have any practicable means to resolve this dispute. The situation presented here highlights the problems inherent in post-trial resolution of *Batson* issues.

during the sidebar conference did defendants respond to the court's inquiry concerning the reasons the two black prospective jurors were challenged. Nor did defendants ever ask to make an offer of proof on the issue during the ensuing three days of the trial.

The first time defendants offered any race-neutral explanation for their peremptory challenges was in their motion for a new trial. In their motion, defendants asserted that one of the black jurors they sought to strike, who was an assistant housekeeper at the Drake Hotel, lacked education and "appeared to be singularly disinterested in the entire voir dire proceedings." Defendants' motion for a new trial ("defendants' motion") at 7.[5] Similarly, defendants claimed that the other challenged black juror, a food server at Hines Hospital, also lacked education and interest, and he appeared confused about the nature of the case in which he previously served as a juror. *Id.*[6] Because defendants did not offer these explanations at the appropriate time, plaintiff was precluded from contesting the adequacy and good faith of defendants' present assertions. Moreover, the court was deprived of a meaningful opportunity to evaluate the sufficiency of defendants' subjective reasons while it could personally observe the challenged jurors' demeanor and apparent race.

The credibility of defendants' after-the-fact justifications is not enhanced by the fact that defendants apparently conducted an unauthorized post-trial interview of another juror, who purportedly confirmed defendants' observations that the two black jurors continually "nodded off" during the trial. Defendants' response to the motion to reconsider ("defendants' response") at 11, n. 5. The court did not observe the two challenged black jurors "nodding off." More importantly, defendants never brought such inappropriate conduct to the court's attention so that remedial action could be taken.

Now, defendants claim that the court did not afford them an opportunity at trial to

tender race-neutral reasons for their peremptory challenges. Defendants' response at 10–11. The court finds this belated claim lacks both credibility and support in the record.

## B. This Court's Procedure for Administering *Batson*

The Supreme Court has expressed its " . . . confidence that trial judges can develop procedures to implement the Court's [*Batson* ] holding." *Georgia v. McCollum,* —— U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). That task is not an easy one. Fundamental administrative problems exist when a *Batson* issue is not raised until *after* the parties have exercised their peremptory challenges. As explained in this court's opinion granting defendants' motion for a new trial,

> [Plaintiff] has not asserted any race-based claim. However, race is an implicit factor, given the circumstances of this case. The sensitive nature of the underlying facts prompted the court to take measures that would prevent disruption of the trial if a *Batson* claim were asserted *after* a black prospective juror had been excused. A mistrial was a potential consequence since the court could not recall and impanel a wrongfully discharged black juror.

Opinion at 10 (emphasis original). In both criminal and civil rights cases involving racial implications, this court has routinely asked counsel for the government, municipality or police officers to give race-neutral reasons at sidebar when they wish to exercise a peremptory challenge against a prospective juror who appears to be a member of a protected group. The court has followed this procedure to obviate the expense and delay that would result if a jury were discharged because a party exercised peremptory challenges in a manner prohibited by *Batson* and its progeny; then, a new jury would have to be impanelled. This procedure obviates the

---

5.  At the final pretrial conference, the court asked counsel if they wished prospective jurors to be questioned about their educational background. Defendants' attorney declined. · Transcript of Proceedings, February 14, 1992 at 10–11. Defendants have not demonstrated that education

bears a relationship to this case. *United States v. Joe,* 928 F.2d 99, 102 (4th Cir.1991).

6.  This juror's "confusion" is not evidenced in the record. Tr. 49.

disincentive a trial judge might otherwise have in finding that the race-neutral reasons stated after-the-fact are inadequate or incredible. Until this case, the court has enjoyed the cooperation of counsel in complying with its procedure requiring sidebar explanations before striking jurors who appear to be members of a group protected by *Batson.*

Unquestionably, when the court first directed these defendants to provide race-neutral reasons for challenging any black prospective juror, "... the racial undertones of this case [did not constitute] a *prima facie* showing of racial discrimination." *Id.* Based on this finding, the court concluded there was error in the jury selection process entitling defendants to a new trial.

## C. Appellate Courts Have Approved the Procedure Followed by this Court

■ The Seventh Circuit has not yet addressed the particular procedures trial judges should or should not follow in administering *Batson.* Nevertheless, the Court has expressed in strong terms its concern that trial judges effectuate the *Batson* directive:

> ... "[T]his circuit has taken a deadly serious approach to *Batson"* [quoting the district court]. That is because exclusion of potential jurors on the basis of race causes deadly serious harm to the excluded citizen, the defendant, and our system of justice as a whole. (Citation omitted).

*Splunge v. Clark,* 960 F.2d 705, 709 (7th Cir.1991) (affirming issuance of a habeas corpus writ based on a state court prosecutor's challenge of a black juror without providing a sufficient race-neutral explanation).

Other circuits have addressed procedures for implementing *Batson.* Plaintiff contends that the procedures followed by this court have been approved implicitly by these decisions. For example, in *United States v. Chinchilla,* 874 F.2d 695 (9th Cir.1989), the Court suggested that race-neutral explanations be given *before* tendering racial strikes:

> [A]lthough the striking of one or two members of the same racial group may not always constitute a prima facie case, it is preferable for the court to err on the side of the ... [right] to a fair and impartial

jury. It might be advisable for the court and counsel to have a pre-selection *in camera* discussion in which the cognizable racial group is identified. Then during the course of jury selection, counsel could ask for a recess and explain *in advance* the reasons for an intended peremptory challenge of a member of that group. The judge could pass on the sufficiency of the reason at that time. (Emphasis original)

*Chinchilla,* 874 F.2d at 698 n. 5.

Similarly, in *United States v. Johnson,* 873 F.2d 1137 (8th Cir.1989), the Court suggested that trial judges require race-neutral reasons for peremptory strikes—even when the existence of a *prima facie Batson* case is unclear—to insure an adequate record for appellate review:

> [W]here the district court considers the issue to be close, conservation of judicial resources might well justify inquiry of the government attorney as to the reasons for making a strike. The district court may then wish to consider whether the reasons should be stated and a ruling be made as to their validity. Thus, the record would be complete on appeal for consideration of the *Batson* issue, without the possibility of a remand and a later reconstruction of the record, as is necessary in this case.

*Johnson,* 873 F.2d at 1140 n. 3.

■ *Chinchilla* and *Johnson* recognize that a procedure requiring race-neutral explanations is permissible—even advisable—in situations where a prima facie *Batson* case is unclear but racial motivation *might* be a factor. This procedure also protects the public interest in ensuring that the jury selection process is not tainted by racism. As noted by the Supreme Court in *Georgia v. McCollum,* requiring a party to provide a race-neutral justification for a peremptory challenge causes no prejudice to that party. —— U.S. ——, 112 S.Ct. 2348 (1992). By requiring an explanation before the strike is permitted, the trial court may protect the rights of all parties.

## D. Defendants' Unexplained Challenges of Two Black Prospective Jurors Created a *Prima Facie Batson* Case

■ Plaintiff contends that the fact that this case arises from an interracial setting in

which three white police officers were charged with unlawfully causing the strip search of a black woman, coupled with the fact that the white police officers used two of their three peremptory strikes against blacks, provided a sufficient basis for establishing a *prima facie Batson* case. In addition, defendants' refusal to follow the court's procedures for challenging black jurors, and their silence when pointedly asked by the court for a nonracial explanation, buttress a finding of improper racial motivation. The court agrees. No basis exists in the record for concluding that a *prima facie Batson* case existed just before jury selection when the court outlined its procedure for exercising challenges against blacks. However, a basis for concluding improper racial motive existed when defendants used two-thirds of their challenges against blacks, failed to comply with the court's procedure for striking blacks, and then declined to give nonracial reasons for the challenges when explicitly asked to do so by the court at sidebar. *See United States v. Clemmons*, 892 F.2d 1153, 1156 (3d Cir.1989), *cert. denied*, 496 U.S. 927, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990) (even if *prima facie* case is otherwise doubtful, the response to a request for a race-neutral explanation may itself establish a *prima facie* case); *United States v. De Gross*, 960 F.2d 1433 (9th Cir.1992) (*en banc*) (trial court properly disallowed strike when a party failed to offer a gender-neutral explanation).

If the clerk had in fact routinely excused the two black jurors on defendants' list of peremptory challenges before the court intervened and called a sidebar, plaintiff clearly would have had a sufficient basis to raise the *Batson* issue and to ask the court to require a race-neutral explanation from defendants. And if defendants declined to explain their reasons, plaintiff could have had an opportunity to establish that defendants harbored a racial motive for their unexplained challenges. A sufficient basis exists in the record to conclude that defendants' use of peremptory challenges against two black jurors was racially motivated. The court finds that defendants' belatedly expressed concern about the educational background and attentiveness of the challenged black jurors is not credible.

### E. Disallowance of Defendants' Peremptory Challenges Against Two Black Jurors Was Justified by Defendants' Refusal to Follow the Court's Procedure

Instead of timely objecting to the court's procedure for excluding blacks from the jury, defendants simply chose to ignore the court's directive. In choosing this course, defendants acted at their own peril. Plaintiff was denied the opportunity of addressing the sufficiency and credibility of defendants' reasons and the court was precluded from evaluating those issues in a reasonable and effective manner when it could still observe the demeanor and apparent race of the prospective jurors.

Recently, the Seventh Circuit reiterated a trial court's right to take strong measures to enforce its procedural orders, even when disobedience is the result of negligence. *Marroco v. General Motors Corporation*, 966 F.2d 220 (7th Cir.1992) (affirming judgment against party that negligently failed to comply with discovery order). Here, defendants' disobedience was intentional. *Batson* considerations aside, the court was justified in disallowing peremptory challenges that were not presented in accordance with the court's procedures. *United States v. Mackey*, 345 F.2d 499, 502 (7th Cir.), *cert. denied*, 382 U.S. 824, 86 S.Ct. 54, 15 L.Ed.2d 69 (1965); *compare In re Maloney v. Plunkett*, 854 F.2d 152 (7th Cir.1988) (trial judge improperly barred all peremptory challenges because parties previously excluded prospective jurors for racial reasons).

### CONCLUSION

Plaintiffs' motion for reconsideration is granted. For the reasons set forth in this opinion, the court's disallowance of defendants' two peremptory challenges against black jurors was not error. Accordingly, the judgment entered February 27, 1992 is reinstated.