6 F.3d 476
 Jane DOE, Plaintiff-Appellee,
v.
William F. BURNHAM, Individually and in his Official
Capacity as Sergeant and Todd Niewold,
Individually and in his Official
Capacity as Police Officer,
Defendants-Appellants.
 Nos. 92-3087, 92-4158.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 11, 1993.
Decided Oct. 1, 1993.
 
 Michael K. Fridkin (argued), Linda J. Pauel, Sachnoff & Weaver, Chicago, IL, for Jane Doe in No. 92-3087.
 Michael K. Fridkin (argued), Maureen A. Mosh, Ellen B. Katzman, Linda J. Pauel, Sachnoff & Weaver, Chicago, IL, for Jane Doe in No. 92-4158.
 Richard T. Ryan (argued), Mark F. Smolens, Flynn, Murphy & Ryan, Chicago, IL, for William F. Burnham.
 Before CUMMINGS, COFFEY, and MANION, Circuit Judges.
 MANION, Circuit Judge.
 
 
 1
 Officer Todd Niewold arrested Pamela Greenwood[1] for possession of marijuana and took her to the police station. Once there, a female police officer strip searched her. Pamela filed a lawsuit under 42 U.S.C. Sec. 1983, claiming that the strip search violated her Fourth Amendment right to be free from an unreasonable search, and her Fourteenth Amendment right to equal protection. The jury returned a verdict in favor of Pamela on her Fourth Amendment claim. Officers Niewold and William F. Burnham appeal, claiming that the district court improperly denied a peremptory challenge during jury selection, improperly allowed prejudicial remarks during closing argument, and improperly instructed the jury. We reverse and remand.
 
 I. Facts
 
 2
 Pamela was arrested in the parking lot of the Radisson Hotel in Downers Grove, Illinois and later strip searched. Her version of the events leading to her arrest is quite simple. She claims she was arrested because she was a black woman in a predominantly white neighborhood. Pamela's story concerning her arrest begins and ends with this claim. The police officer who arrested her has a more detailed explanation for her arrest. He claims that he arrested Pamela because she possessed marijuana. Following is his more detailed version of the events leading to Pamela's arrest.
 
 
 3
 On May 5, 1989, Officer Niewold worked the midnight shift (11:00 pm to 7:00 am) for the Village of Downers Grove Police Department. While on routine patrol, he pulled into the Radisson Hotel parking lot and noticed a car with three occupants parked in a well-lighted area. He stopped his marked squad car and walked to the driver's window of the car. The three occupants--Pamela, her fourteen-year-old daughter Ebony, and their friend, Matthew Williams--were having a conversation, and apparently did not notice the police officer. Officer Niewold shined his flashlight into the driver's window, and saw Pamela seated in the driver's seat holding a plastic bag containing what appeared to be marijuana. Officer Niewold also saw a second bag of marijuana on the back seat, next to Williams.
 
 
 4
 When Pamela noticed the light from the flashlight she "jumped a little bit." She then took the marijuana in her left hand, and reached over to roll down the window with her right hand. She asked Officer Niewold, "What's the matter? What did I do? Is there something wrong?" She then placed the bag of marijuana between her legs, and asked Officer Niewold why he was "hassling" her. Officer Niewold claims that she then passed the bag of marijuana to her daughter Ebony, who was sitting in the passenger seat.
 
 
 5
 The following facts were not disputed at trial. Officer Niewold ordered the passengers out of the car and conducted a pat-down search. Pamela was wearing tight-fitting jeans. She denied that there was any marijuana in the car. The police recovered three bags of marijuana: one was found on the floor near the passenger seat where Ebony had been sitting, one was found on the back seat near Williams, and one was found in his wallet. Officer Niewold and two police officers who had arrived on the scene as backup then took the three suspects to the police station. Once there, Officer Niewold recommended to his superior, Sergeant William F. Burnham, that Pamela be strip searched. He cited as reasons her uncooperative conduct, her attempts to hide the drugs, and her continued denial of the presence of marijuana. Sergeant Burnham authorized the strip search. A female police officer conducted the actual search. She took Pamela into a small conference room, outside of public view, and had her remove her clothing. The female police officer checked each article of clothing as it was removed. She also visually checked Pamela's body. The search lasted about two minutes; no contraband was found.
 
 
 6
 During Pamela's trial for possession of marijuana, the prosecutors failed to bring the actual contraband to court. The trial judge dismissed the charges. Pamela then filed a federal action under 42 U.S.C. Sec. 1983, claiming that Officer Niewold and Sergeant Burnham violated her rights under the Fourth and Fourteenth Amendments by strip searching her. Discovery proceeded and the district court scheduled trial.
 
 
 7
 Before jury selection, the district judge informed the attorneys of her procedure for striking black jurors. She required that attorneys request a sidebar before excluding black members of the venire panel. When jury selection got underway, the defendants made peremptory strikes against two black members of the panel. The judge called counsel to sidebar "to inform counsel that [the court] was disallowing defendants' peremptory strikes against the two black prospective jurors because the defendants had failed to request a sidebar to proffer any race-neutral justification." Doe v. Village of Downers Grove, 834 F.Supp. 244, 247 (N.D.Ill.1992). Pamela's attorney at no time objected to the strikes. Because of the court's ruling, the black jurors the defense intended to strike remained on the jury.
 
 
 8
 During the trial, Pamela denied that she ever possessed marijuana. Officer Niewold testified that he saw Pamela with marijuana and she attempted to hide it. During closing argument, Pamela's attorney attempted to portray the police officers as liars. He made the following statement: "We do not like to believe that witnesses get up on the stand and lie, let alone police officers who are sworn to uphold and protect the law and serve and protect us, but we know it happens. We've seen it in the news, we've seen it on videotape."[2] The police officers objected to this statement, but the court overruled their objection. The court provided no limiting instruction advising the jury how to regard the statement.
 
 
 9
 After both sides had rested, the court instructed the jury. The court provided the following instruction on the Fourth Amendment's standard for reasonableness:
 
 
 10
 In the first aspect of Plaintiff's claim, plaintiff alleges that the Defendants subjected her to an unreasonable search of her body. The Constitution protects every citizen against unreasonable searches. Law enforcement officers may not strip search an individual for contraband unless the officers have a reasonable basis to believe at the time of the search that the individual is concealing contraband on his or her body. The test of reasonableness requires a balancing of the privacy interest involved in the search and the government's need for conducting the search. Under Illinois statutory law, the police may not strip search a misdemeanor arrestee if there is not a reasonable belief that the arrestee is in possession of a controlled substance. Marijuana is not a controlled substance. Defendants deny that they subjected plaintiff to an unreasonable search of her body.
 
 
 11
 The defendants objected to the instruction. The court overruled their objection, but expressed concern that the jury "might think I'm directing a verdict" because of the instruction's wording.
 
 
 12
 The jury returned a verdict for the plaintiff on the Fourth Amendment unreasonable search claim but for the defendants on the Fourteenth Amendment equal protection claim. The police officers then moved for a new trial, and the court granted their motion. The court concluded that it had erred by sua sponte denying the defendants' peremptory challenges of black panel members, even though the plaintiff had never objected to the challenges pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The plaintiff then filed a motion asking the court to reconsider its grant of a new trial. This motion persuaded the court, again, to change its ruling--the court vacated its order granting a new trial and reinstated the judgment entered after the first trial.
 
 
 13
 The defendants appeal, raising three issues: 1) that the district court improperly applied Batson; 2) that the district court erred in overruling the defendants' objection to the remarks made during closing argument; and 3) that the jury instructions inaccurately depicted the Fourth Amendment reasonableness standard.
 
 II. Analysis
 A. Jury Instruction
 
 14
 We first consider whether the jury instruction on the Fourth Amendment reasonableness standard requires reversal of the verdict. On appeal, our review of jury instructions is limited. See Binks Mfg. Co. v. National Presto Indus., Inc., 709 F.2d 1109, 1117 (7th Cir.1983). "[W]e review jury instructions only to determine if 'the instructions as a whole were sufficient to inform the jury correctly of the applicable law.' " Patel v. Gayes, 984 F.2d 214, 218-19 (7th Cir.1993) (quoting United States v. Villarreal, 977 F.2d 1077, 1079 (7th Cir.1992), cert. denied, 113 S.Ct. 1350, 122 L.Ed.2d 731 (1993)). Reversal is warranted only if the instruction misguides the jury so much that a litigant is prejudiced. Goldman v. Fadell, 844 F.2d 1297, 1302 (7th Cir.1988). Under these standards, we conduct a two-pronged analysis. First, we determine whether the instruction misstates or insufficiently states the law. If so, we next determine whether the misstatement or deficiency likely confused or misled the jury causing prejudice to a litigant.
 
 
 15
 The first part of the instruction at issue correctly stated the legal test for the constitutional reasonableness of a strip search in a case such as this. The instruction stated that: "Law enforcement officers may not strip search an individual for contraband unless the officers have a reasonable basis to believe at the time of the search that the individual is concealing contraband on his or her body. The test of reasonableness requires a balancing of the privacy interests involved in the search and the government's need for conducting the search." See Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979); Mary Beth G. v. City of Chicago, 723 F.2d 1263, 1273 (7th Cir.1983). No doubt, if the instruction had ended with this statement, it at least would have been accurate.[3] But the instruction proceeded to confine the constitutional scope of reasonableness to Illinois laws which address strip searches and marijuana. The instruction stated: "Under Illinois statutory law, the police may not strip search a misdemeanor arrestee if there is not a reasonable belief that the arrestee is in possession of a controlled substance. Marijuana is not a controlled substance."
 
 
 16
 Although the instruction initially encouraged the jury to consider the constitutional standards for reasonableness, it ultimately required the jury to confine its assessment of reasonableness to the norms of Illinois law. The problem is that the norms embodied in the Constitution and the norms authorized by the Illinois legislature are not necessarily interchangeable. In fact, a state may provide greater protections under its laws than the Constitution requires. See California v. Ramos, 463 U.S. 992, 1014, 103 S.Ct. 3446, 3460, 77 L.Ed.2d 1171 (1983); Chang v. Michiana Telecasting Corp., 900 F.2d 1085, 1087 (7th Cir.1990); Nadworny v. Fair, 872 F.2d 1093, 1100 (1st Cir.1989). The Illinois legislature's sense of reasonableness cannot be grafted onto the Fourth Amendment. Illinois may set its own standards and provide remedies under its laws for their violation. But just because Illinois chooses to regulate police behavior in a certain way does not mean the police officers violate the Constitution by transgressing those rules.
 
 
 17
 The district court erred by defining Fourth Amendment reasonableness in the jury instructions according to Illinois statutory law. The next question is whether the defendants were prejudiced by this error. Of course, they would not have been prejudiced if Illinois law simply parroted the constitutional reasonableness standard, but it does not. Rather, Illinois has chosen to protect those suspected of possessing marijuana from the indignity of a strip search. The Constitution carves no similar specific protection. The Constitution simply protects citizens from unreasonable searches. Whether a strip search for marijuana is constitutionally unreasonable depends on the circumstances. It may well be that such searches are constitutionally unreasonable, but that is for the jury to decide. See McKinley v. Trattles, 732 F.2d 1320, 1325 (7th Cir.1984) (upholding jury finding that strip search in prison violated Fourth Amendment's reasonableness standard); Act Up!/ Portland v. Bagley, 988 F.2d 868, 872 (9th Cir.1993) (if qualified immunity does not apply question of whether search is reasonable is usually one for the jury).[4] See also Gramenos v. Jewel Companies, Inc., 797 F.2d 432, 438 (7th Cir.1986), cert. denied, 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987).
 
 
 18
 Under the instructions as given, the jury essentially was required to conclude that if the strip search was for marijuana, it was unreasonable. The district court was correct to fear that the instruction might have the effect of "directing a verdict." If the error was isolated or corrected by other instructions provided to the jury, then we might be able to ignore it. See Smith v. Chesapeake & Ohio Ry., 778 F.2d 384, 387-88 (7th Cir.1985) ("When assessing the adequacy of jury instructions given at trial, we consider not only 'the instructions as a whole, but [also] ... the opening statements, the evidence, and the closing argument' to determine if the jury was adequately informed of the applicable law."). But here the error strikes at the heart of the Fourth Amendment claim. Any juror capable of reading and reasoning would think the instruction compelled a finding that the search was unreasonable.
 
 
 19
 The plaintiff's attorney was quick to exploit the advantage provided by the erroneous instruction during closing argument:
 
 
 20
 Ladies and gentlemen, this case is even easier than that. You can take this a step further. Even if the police, even if you believe that Officer Niewold saw Pamela holding a bag of marijuana, and even if you also must believe that the police had reasonable grounds to think that Pamela still had marijuana on her, a strip search was still unconstitutional.
 
 
 21
 Because--as the plaintiff's attorney intimated in closing argument--the instruction essentially required a finding of unconstitutionality, it prejudiced the defense. Therefore, reversal is necessary. This case must be remanded so that the defendants can defend themselves under the constitutional definition of reasonableness rather than the law adopted by the Illinois legislature.
 
 B. Other Issues
 
 22
 Having decided that the district court committed reversible error in charging the jury, we need not resolve the other points raised on appeal. We choose to briefly address these points, however, to guide the district court on remand.
 
 
 23
 The district court employs an unusual procedure for allowing peremptory challenges of black jurors, evidently derived from its reading of the Supreme Court's declarations in Batson and Edmonson v. Leesville Concrete Co., Inc., --- U.S. ----, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). In Batson the Supreme Court condemned the practice of striking jurors because of their race, and authorized a basic (although not specific) procedure to avoid this practice. Edmonson extended the rule set forth in Batson to civil cases. Edmonson, --- U.S. at ----, 111 S.Ct. at 2089. According to those cases, a party suspecting a race-based peremptory challenge was to make a "timely objection," Batson, 476 U.S. at 100, 106 S.Ct. at 1725, and then a "prima facie showing" that the strike was race-motivated. Id. at 97, 106 S.Ct. at 1723. The burden then shifted to the opposing party to "come forward with a neutral explanation for challenging black jurors." Id.
 
 
 24
 In this case the district court disallowed a peremptory challenge, even though no Batson objection was ever made. Under Batson, a court should at least wait for an objection before intervening in the process of jury selection to set aside a peremptory challenge. Cf. Thomas v. Moore, 866 F.2d 803, 804 (5th Cir.), cert. denied, 493 U.S. 840, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989) ("a timely objection ... is a requisite to a Batson claim."); United States v. Pulgarin, 955 F.2d 1, 2 (1st Cir.1992) ("Contemporaneous objection is especially pertinent to Batson claims."). Tradition engraves the process of peremptory challenges into our system; it is "a procedure which has been part of our common law for many centuries and part of our jury system for nearly 200 years." Batson, 476 U.S. at 112, 106 S.Ct. at 1731 (Burger, J. dissenting). Judges should invade a party's discretion to strike potential jurors only in narrow circumstances. We are aware of no case which authorizes a judge to invoke Batson when a party has never objected on that basis.
 
 
 25
 Finally, we consider the plaintiff attorney's statements during closing argument, in which he encouraged the jurors to rely on what they had seen on the news in order to judge the defendants. The court allowed this argument, over defendants' objection. The court erred. Jurors should not be encouraged to carry prejudice formed outside of the courtroom when sitting in judgment in the courtroom. We cannot know what the plaintiff's attorney meant when he said "We've seen it in the news, we've seen it on videotape" in arguing that policemen are capable of lying. It is logical to assume that he was making a not-so-veiled reference to the videotaped beating of Rodney King. But Officers Niewold and Burnham are not the officers who bludgeoned Rodney King. They should be judged according to the facts of this case. At least a limiting instruction would have been appropriate here. But we need not assess the effect of this error since we have reversed on other grounds.
 
 III. Conclusion
 
 26
 The district court improperly instructed the jury on the Fourth Amendment claim. The defendants were prejudiced by this erroneous instruction. Therefore, we reverse the jury's verdict, and remand to the district court for further proceedings.
 
 
 27
 REVERSED and REMANDED.
 
 
 
 [1]
 The district court allowed Pamela to plead anonymously, and therefore she is listed as Jane Doe in the case caption. However, she elected to use her actual name--Pamela Greenwood--during trial, and that is the name we use in this opinion
 
 
 [2]
 The trial took place on February 27, 1992, during the highly publicized trial of four Los Angeles police officers for the videotaped beating of Rodney King
 
 
 [3]
 We make no statement whether this portion of the instruction, standing alone, would have sufficiently stated the law
 
 
 [4]
 The defendants do not raise a qualified immunity issue on appeal